We'll hear the next case. Lehman XS Trust vs. Greenpoint. Good morning, Your Honors. Hector Torres on behalf of the appellant trustee. Your Honor, I'd like to focus on three legal errors that were committed by the district court in connection with the third cause of action and the fourth cause of action. With respect to the third cause of action, essentially the court dismissed it on the grounds that it was duplicative of the reps and warranty claim. And we submit that that claim was not duplicative, the indemnity claim was not duplicative of the reps and warranty claim, because these are two separate claims. What was the damages that were going to be paid by your client? It depends on the claim, Your Honor. And with respect to the reps and warranty claim What are the damages that you seek under the indemnification? Under the indemnification, the damages are all the losses that are related to or arising from the breaches with respect to the reps and warranties in connection. But an indemnification agreement is where you're required to make a payment to a third party and then you seek reimbursement from the person who's issued the indemnification agreement. So that's not what you're seeking. Your Honor, the You're seeking payments from Greenpoint, right? Your Honor, the payment we're seeking, and this goes to the issue raised with respect to the argument that the indemnity was exclusively a third party claim and Judge Carter considered that argument and he rejected it because in the New York law you can have a bilateral indemnification agreement between two parties to an agreement. The third cause of action, you call it an indemnification claim, but it seeks losses for the plaintiff's losses. That's correct, Your Honor. Not to recover payments made to a third party. That is correct. Would those losses have been different than the amounts claimed under Counts 1 and 2? Yes, Your Honor. And how would they have been different? With respect to the counts, the initial counts, 1 and 2- For breach of representation and warranties. For breach of representations, if you're under Section 8, it would be a repurchase remedy. So essentially the only remedy that you had available if you're suing under Section 8, which was dealing with the breach of reps and warranties, is a repurchase, a cure or repurchase with respect to the loans that breached the reps and warranties. With respect to the third cause of action, that claim is seeking the damages that relate to the misrepresentations, so that unlike the initial claim, there's an additional element of proof that has to be established. What are they? The additional- How are they any different than the damages that arise from the representations and warranties? They're different in terms, if you look at the actual language of the agreement, it's clear that under Section 9 there's a requirement to show that there is some kind of nexus between the misrepresentation and the loss. There is no such requirement with respect to a claim under Section 8, which is essentially, if you show that there's a breach, then you don't have, there's no separate inquiry in terms of trying to determine whether that breach relates or is connected to the loss. There's an additional- An indemnification agreement that really is nothing more than a breach of contract claim is then a breach of contract claim, not an indemnification. Except unless the parties, unless this is the Hooper case- They can call it whatever they want to, but the New York Court of Appeals has said quite clearly that if it's not in the true nature of indemnification, it's not. The Hooper case- And I've breached the agreement, but I've also got an indemnification agreement. And then Judge Carney goes out and has to pay money to somebody else to get widgets. And that may also be a damages out of a breach of contract claim, but it ends up in the nature of indemnification to some degree, too. Or she becomes liable to somebody else for that, and she ends up paying money to them for that. That's indemnification, but this is no different than just seeking money from Greenpoint for the injuries you've already gotten because Greenpoint blatantly misrepresented what was in its mortgages. Your Honor, you're correcting your articulation with respect to the basic indemnification claims under New York law. Except that the Hooper decision does explicitly provide that two parties can have an agreement to indemnify one another with respect to the losses. And that's essentially what we're claiming the language here establishes. So we're not disputing the basic premise, and you are absolutely correct that- Go back and look at Hooper, but you haven't really convinced me. Well, Your Honor- What particular language in the indemnification clause can you point to to suggest that it is, or to establish clearly that it is a bilateral indemnification of the kind you describe, as opposed to the more ordinary third-party indemnification that the name indemnification signifies and that the New York cases have held? Your Honor, this precise question was actually analyzed by Judge Carter in his March 2014 decision. And he pointed to the structure of the indemnification agreement and the fact that the initial clause expresses the obligation to indemnify. And then there's a separate clause which segregates, which is segregated from the initial clause, which states that if there is a third-party claim, and then it has some notice requirements. So in his decision, he made clear that that clearly indicates that this was not- That was by negative implication because the last sentence made a reference to third-party, that he was suggesting that maybe the first several didn't include that. But that was not a clear affirmative statement that this was a bilateral indemnification clause, such as made each party liable to the other for damages incurred upon breach. You're correct. Not along the terms you described, but certainly in terms of the way he described it, and you look at the intent of the parties, the intent, by including the segregation, was that there would be indemnification in the bilateral context. He inferred that from the- From the language of the parties. Yeah. But it's kind of the absence of an expressed thing to the contrary and a mention of the third party in the last sentence. Well, I would frame it in terms of the fact that they actually had two mechanisms with respect to enforcing that particular clause. One required notice and one didn't, indicated that the understanding was that there would be no requirement for notice if it's actually damages that arise from the bilateral relationship. Could you speak to the fourth cause of action, please? Yes, Your Honor. Why it should relate back and also why it doesn't- I mean, your adversaries argue that that also had to do with kind of investor claims, kind of 10B5 claims and not this kind of indemnification at all. Right. Yes, Your Honor. With respect to the fourth cause of action, there were two grounds on which it was dismissed. The first was that the agreements, there was a different agreement in connection with the original pleading and the amended pleading, but that's not the operative test under Rule 15. The operative test is do both pleadings arise from the same transaction, occurrence, or conduct? And here the answer to that question unequivocally is yes. But it has to give fair notice. It's the same transaction as well as the notion that the defendant would have fairly been put on notice by the summons with notice that you served or filed. And it seemed to me that although all of these are complicated transactions that have many parts, you could construe it as one transaction. In fact, they have very different purposes, these agreements, and so I find it difficult to understand why the district judge was wrong in construing them separately. Your Honor, because if you look at the actual reference on the summons with notice, it basically makes a reference to the fact that there was a breach of the reps and warranties, and there's no specification. You're talking about different reps and warranties in the prospectus and the indemnification agreement than we are in Accounts 1, 2, and 3, right? But they're essentially the same. Although they're not coextensive, you're essentially talking with respect to one of the critical reps and warranties is the rep and warranty that there was compliance by the originator with respect to the underwriting guidelines. That is, in essence, what is one of the core claims that's critical to the MLPA claim. It's also the claim that is involved in connection with the violation of the indemnification agreement because it's exactly the same representation with respect to exactly the same loans, with respect to the same loans that were transferred to the same trust. The trustee is a totally different concept, which has nothing to do with the certificate holder's claim against the originator that the originator's mortgages were junk as opposed to in compliance with the underwriting guidelines. The certificate holders are not interested in the indemnification aspect of it. In the indemnification agreement, the trustee is agreeing to indemnify in connection with the representation that were made in what was called the Greenpoint information, which is referenced in the prospective supplement that was actually disseminated in order to market the securities. But it's the same representation. All right. You have some time for rebuttal. Thank you, Your Honor. We'll hear from the other side. Good morning, Your Honors. Theodore Snyder, law firm of Murphy & Magano, for Defendant Appleby Greenpoint Mortgage Funding. So I know my adversary, there are four causes of action in the Second Amended Consolidated Complaint. My adversary only addressed the third and fourth. I don't believe there's any real issue. I think one question is whether we should hold our decision pending the Court of Appeals' decision in Flagstar. Yes. And the answer to that is we urge you not to. The Quicken Loans decision and what we call the fore-end, the prior Greenpoint decision, are right on point. The First Department has addressed this issue. Did you suffer any prejudice from a delay? The prejudice would be a long delay that we've already, the case has gone on for quite some time. More specific than that. What prejudice would you suffer? The only prejudice I can point to, Your Honors, is more delay that we don't want to have to incur. In this case, there's actually no conflict among the courts as to how this issue is treated. Two panels of this court, the First Department and the various district court judges, I count 15 judges who have found that the accrual clause does not extend the statute of limitation. I count zero who have found otherwise. The other issue, which I think is important to this, is the Court of Appeals may never decide that case. As the reply brief of the plaintiff pointed out, well, they claim that the argument would be in early this year. In fact, we've- Scheduled for the fall. It will not happen before the fall. That's what we were told. It hasn't actually- The Clerk's Office informs us that it's scheduled for the fall, which is a little unusual that it's been fully briefed for some period of time. This is a leave grant from the Appellate Division, not from the New York Court. Exactly, Your Honor. The Appellate Division, after affirming the Supreme Court commercial part and saying that Ace and Deutsche Bank decide the matter, then grants leave. Exactly, Your Honor. So this is not something the Court of Appeals is hankering to decide, obviously. Sounds like the First Department is having doubts. Well, they unanimously ruled, so I don't believe that there's any real dispute here. And this Court, the standard, the apical standard is unless there's persuasive evidence to the contrary, this Court should follow the First Department. What happens if you're surprised and the Court of Appeals does go the other way? I just don't think that there's any realistic chance of that. And actually, what's more likely, Your Honor, is because of this delay, that sometimes is a signal that the case will not . . . There's parties maybe settling the case. That's been our experience in certain cases. The Court of Appeals puts off the argument. I don't need . . . There's no way of knowing what's going to happen. We don't. We don't. But that's speculation on my part, but it's just as likely that that happens, that . . . It does seem odd that it's been fully briefed for such a long period of time, and it's not being . . . it's not been scheduled until the fall. But, maybe the scheduling practices have changed in the last 15 years. I don't know. I don't believe so, Your Honor. We have controlling authority. We just asked the Court to follow its controlling authority on this point. And as far as the remaining points, which I'd like to turn to, there are a couple of key facts here that I think . . . I just want to go straight to the third cause of action, which my adversary, I think, misstated how it played out, especially the Hooper case. The Hooper case deals with whether there's a first-party or third-party claim. And there has to be . . . It's strictly construed, indemnification clauses are, to not allow first-party claims. And the presumption is that these types of indemnification clauses relate to third-party claims. But, what he didn't . . . what he sort of conflated was the idea that, let's assume for a moment that this is a first-party claim and it's allowed. Judge Carter's decision and all the other authorities that we presented, the Goodpaster case, the Tenth Circuit case, assuming a first-party claim is allowed . . . If you call it indemnification, it doesn't change the nature of the cause of action. It's a breach of contract cause of action. And the authorities are 100 percent on point on that. So, the applicable . . . and what was misleading also was the first and second causes of action weren't described correctly. The first cause of action is for specific performance, which is repurchase. The second cause of action is for damages, $1.1 billion. And that's because there's no sole remedy clause, as there often is in these cases. So, in that circumstance, the third cause of action is really just a carbon copy of the second cause of action. It's seeking the same damages, and as they acknowledge, it's seeking damages for the same breaches of reps and warranties. So, the same statute of limitations applies. And the fact that they call this a remedy, the Section 9 of the contracts, they call that clause a remedy, that's fatal to their claims. Because a remedy, as ACE teaches us, doesn't change the underlying act. In ACE, the alternative remedy was the repurchase. The court said that doesn't change the actual actor complaining about, which is the alleged wrongful or misrepresentations or omissions. The accrual clause was just a mechanism by which one cured the breach in regard to the representations and warranties, which occurred at the time of the closing. In our case, the closing . . . The default isn't . . . the beginning of the default of these mortgages is not the breach. It was the quality of the mortgages at the time of the closing, which was knowable. Because the way these breaches ultimately become known is they have a forensic audit of these. And they discover that the compliance rate with regard to loan-to-value ratios is less than 10%. There was no verification that they were owner-occupied. There was no income verification. It was just a laundry list of why Dodd-Frank was necessary. That's your opinion here or there in terms of the ultimate result. The representations warranties were set. This is what these things are now. That's exactly right, Your Honor. In this case, it wasn't on the date of the closing of the trust. It was on the date of what we call the PPTLs, which was the date on which the loans themselves were sold, which was more than six years, even before these FHFA filings. And you will see from our briefs, of course, that we have multiple reasons why all of these claims are time-barred. Could you address the fourth cause of action? Absolutely. The summons with notice does refer to breaches of the promise that the decision to originate was conducted pursuant to the originator's underwriting guidelines. And that's what's kind of picked up in the indemnification agreement, I think, under the fourth cause of action. Absolutely, Your Honor. So there are a series of reasons why the fourth cause of action does not relate back. One of them was omitted from my adversary's discussion, which is two of the trusts actually have reps and warranties that were made on the execution date of the indemnification agreements. Those are more than six years before FHFA filed their pleadings. FHFA's pleadings, which we spent a good time on our briefs on, they're nullities. They're invalid under New York law. We haven't even addressed that in this argument. But there are no cases where there's a relation back to a nullity. In fact, New York courts are unanimous in not allowing that. And we cite nine cases in our brief on page 38 that do not allow that. Judge Carter also picked up on the idea that you can't relate back to something that is an original pleading that is untimely. So if the first three causes of action are untimely, as we pointed out, you can't relate back to that. The weight of authority on that is on our side. We have the Seventh Circuit case, district court cases from the Sixth and Ninth Circuits that were affirmed that makes total sense. You can't just breathe life into a new pleading. So finally, to your point, Your Honor, on the difference, you can only relate back to something that gave you notice of the claim. The summons with notices, and this is a feature of New York practice, are fairly short documents that talk only about breaches of reps and warranties in loan sale agreements that Greenpoint entered into with Lehman Brothers. These new agreements that came up in the middle of the case when they decided to amend their pleading to try and save their case, these are agreements relating to the marketing of the securities to investors. FHFA had no ability to bring a claim under those agreements. So we would have no notice that this filing by FHFA, which is not even a filing by the trustee, we would have no reason to believe that these other agreements were somehow implicated. And since notice is a touchstone in this type of thing, there couldn't be a relation back. The transactions and occurrences are different. Thank you. Thank you. We'll hear the rebuttal. Thank you, Your Honors. Picking up in reverse order with respect to the fourth cause of action, on the timeliness argument, the decision below was based on a decision out of the Seventh Circuit, but that's not the decision. This Court, it's a case of first impression for this Court whether timeliness is a precluder for the application of relation back. There are two cases that go the other way. One was a decision written by Judge Cabranes when he was on the district court, where he made it very clear that because of the liberal purposes underlying Rule 15, untimeliness is not a requirement. It's not a basis for not applying relation back. And he relied, in addition to the liberal purpose of the rule, he relied on the literal terms of the rule. If you look at the actual rule, there's absolutely nothing in the rule that contains a requirement that the original pleading be timely for purposes of relation back. And the Supreme Court in the Krupski case, interpreting Rule 15, addressed this precise issue in terms of what are the requirements under Rule 15 and made very clear that those requirements are exclusive. And in the context of rendering that decision also indicated that this is not an area where the district court judge has any discretion in terms of whether or not to apply it if there's a determination that it otherwise complies with the requirements of relation back, then the fact that the original pleading was untimely is not a basis for precluding it. And the other case was a Fifth Circuit decision, Caldwell, where the original pleading was based on a 1981 claim that was untimely, and they permitted an amendment to include a Title VII claim that related back, even though it would have been untimely if it was filed after the original pleading. So we submit that on the timeliness argument. There really is no basis for this. You're out of time, but could you address whether there's the question of whether we should wait for the Court of Appeals? Your Honor, I believe that you should wait for the Court of Appeals. It's a significant ruling. There are obviously enormous repercussions in terms of what's at stake in this case. The Court has taken it. It's based on a clause that is at stake. Right, you're correct, Your Honor. Well, there's a difference. Yes, there is, Your Honor, and I believe that with respect to that, in light of the fact that the appeal is based essentially on an accrual clause in connection with an issue that hasn't been addressed by the Court of Appeals, and in responding to the Ace comment, Ace was not a decision that addressed the application of an indemnification agreement. Particularly one based on a separate agreement, and also was not one that looked at the accrual issue. But with respect to the, we would respectfully request that the Court do defer. They've been submitted. Obviously, we can't predict exactly when the decision will be issued, but we believe that it would make sense for the Court to defer. Thank you. We will reserve the decision.